510 P.2d 490

**Jay TURNER and June Turner, husband and wife, Plaintiffs-Appellants,**

v.

**LaVern MENDENHALL et al., Defendants-Respondents.**

No. 11095.

Supreme Court of Idaho.

May 25, 1973.

Merrill K. Gee, Gee & Hargraves, Pocatello, for plaintiffs-appellants.

Wallace M. Transtrum, Soda Springs, for defendants-respondents.

McQUADE, Justice.

In 1962 Jay Turner and June Turner, plaintiffs and appellants, leased 240 acres of farm land in Caribou County from LaVern Mendenhall and Vonda Mendenhall, then husband and wife. Although the initial term of the lease was five years, the lease's renewal provision was used to extend the lease for an extra five years until December 31, 1972. Respondents obtained a Utah divorce which resulted in the wife, Vonda Mendenhall, receiving an undivided one-third of the 240 acres of Idaho farm land here in question, and the husband, LaVern Mendenhall, receiving an undivided two-thirds of the Idaho property. In August of 1968 an action was filed against

the former wife, Vonda Caine, (now re-married) by LaVern Mendenhall and his daughter seeking enforcement of the Utah decree by partition or sale of the premises and the apportionment of the proceeds. The Idaho district court ruled in July of 1970 that the interests of the parties were the same as decided by the Utah decree, and ordered a sale of the property and division of the proceeds.

During the progress of the above mentioned divorce and decree enforcement proceedings, certain negotiations were occurring between the lessors (Mendenhalls) and the lessees (Turners). The lease of the 240 acres in Caribou County contained a provision providing that the Turners would have the right of meeting any offer that the Mendenhalls might have for the sale of the leased land.[1] In March of 1968, the Turners received an alleged offer in writing[2] from Vonda Mendenhall Caine and her new husband to sell their interest in the leased land for $22,000. This was before the Idaho district court had ruled on the percentage of interest owned by each respondent. The $22,000 represented $20,000 for 160 acres claimed at the time as totally hers by Vonda Mendenhall Caine and $2,000 for her interest in the remaining 80 acres. LaVern Mendenhall gave Jay Turner, several days later, an alleged written offer[3] to sell his interest in the leased land for a percentage of a total purchase price of $20,000. In November of 1968, Mr. Turner received a letter from Mr. Mendenhall's attorney, Wallace M. Transtrum, which stated that Vonda Mendenhall Caine denied any option to sell with Turner. On April 15, 1969, appellant Turner allegedly accepted in writing the above alleged offers.[4]

On March 1, 1971, LaVern Mendenhall gave written notice to the Turners that they must quit possession by April 1, 1971, and that the Mendenhalls desired and intended to sell the property for $50,000. Under the first option provision of the lease, this allowed the Turners 180 days to purchase the property at the $50,000 price.

The present action was brought by the Turners on April 1, 1971. The Turners' first cause of action sought performance of a covenant of quiet enjoyment. The second cause of action asked for specific performance of the alleged option to buy at the $20,000 (plus $2,000) price or in the alternative $36,000 in damages for breach of contract. The district court granted summary judgment for respondents, holding that at best only a "naked offer without consideration" had been made and that before any acceptance the "offer" was withdrawn. On appeal, the Turner's as-

1. The purchase provision of the lease reads as follows: "In the event that lessor desires to sell the premises, the lessee shall have the option to purchase said premises at the same price and on the same terms as any other that may be acceptable to lessor, said option to be exercised with [sic] 180 days from the date of notice given to said lessee of any such offer and intention of lessor to sell."

2. This alleged offer read as follows:
    "WILL                    3-11-68
    SELL 160 ACRES
    FOR 20,000.00
    COMPLETE W/271 SHARES
    OF WATER
    AND SELL ½ OF SOUTH 80
    ACRES FOR $2,000.00
            Vonda K. Caine
            John B. Caine"

3. This alleged offer was made on a creditor's statement form. LaVern Mendenhall's signature appeared below the following statement:
    "When it is determined what my percentage interest is in the above described land, I will sell my interest on that percent of the total $20,000.00 purchase price."

4. This acceptance was allegedly made as part of a letter to Vonda Caine and LaVern Mendenhall concerning lease payments. The letter reads in part: "If you wnt [sic] to accept the $20,000.00 that is at the Federal Land Bank for your farm now, put it in escrow at the Bank until your court case is settled and issue clear title—I will stand the canal co. repair bill.
    "This means you could divide the $20,-000,00 [sic] after the court decides who gets what share, and the $20,000.00 less what you owe Federal Land Bank would be in the bank drawing interest. Please let me know"

sign error to the lower court summary judgment arguing that under the evidence present the decision was improper. It is argued that the option provision was validly invoked and was supported by proper consideration. It is further argued that the first cause of action precluded dismissal of the complaint and required granting of attorney fees.

■ Respondent urges that this appeal should not be heard since it was not taken within the statutory time for appeal.[5] The judgment in this case was filed on January 26, 1972, and the motion to reconsider was filed on February 2, 1972. This met the requirement of Rule 59(e) of the Idaho Rules of Civil Procedure.[6] The statutory sixty day period was complied with since the appeal was lodged eight days after denial of appellants' motion to reconsider.[7] The memorandum decision was filed on March 24, 1972, and the notice of appeal was filed on March 31, 1972.

■ The purchase provision in the lease is a "right of first refusal" or "right of pre-emption" provision. For the lessees to exercise the right of first refusal in this case the lessors must have received an of-

fer and desired to sell the premises upon ascertainable terms and price.[8] The purchase option was not invoked here since the lessors received no offer from a third party in 1968. Since the alleged offers did not come within the terms of the purchase provision of the lease, the transaction was as the district court determined—a naked offer without consideration.[9]

■■ Respondents were granted summary judgment pursuant to Rule 56 of the Idaho Rules of Civil Procedure.[10] Summary judgment was proper only if the evidence showed that no "genuine issue as to any material fact" was presented.[11] Here there were genuine issues as to material facts and a summary judgment should not have been granted. A trial should be had to determine the factual issues which are genuine and material to the case. These issues include a determination of whether the parties intended the writings involved here to actually be offers, whether there was an effective revocation if there were valid offers, and whether there was an unqualified acceptance of any valid offer.

The district court held that the purported written offer of LaVern Mendenhall

5. I.C. § 13–201 states in part: " * * * the running of the time for appeal is terminated by a timely motion for a new trial * * * or a timely motion to alter or amend the judgment, and the full time for appeal fixed by this act commences to run and is to be computed from the entry of any order granting or denying any of the above motions."

6. I.R.C.P., Rule 59(e) states: "A motion to alter or amend the judgment shall be served not later than ten (10) days after entry of the judgment."

7. I.C. § 13–201; see also Howell v. Reimann, 77 Idaho 84, 87, 288 P.2d 649 (1955).

8. See Bennett Veneer Factors, Inc. v. Brewer, 73 Wash.2d 849, 441 P.2d 128 (1968); 1A, Corbin, Contracts § 261A (1963).

9. See footnote 1, supra.

10. I.R.C.P., Rule 56(b) states: "A party against whom a claim, counterclaim, or

cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."

11. Tri-State Nat. Bank v. Western Gateway Storage Co., 92 Idaho 543, 545, 447 P.2d 409, 411 (1968); I.R.C.P., Rule 56 (c) which states: "The motion shall be served at least ten (10) days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. Such judgment, when appropriate, may be rendered for or against any party to the action."

"was something entirely different." The court did not, however, state just what it considered the purported written offer of LaVern Mendenhall to be. Whether this was an offer or not, however, is an issue of fact. This purported offer, made on a Federal Land Bank creditor's statement form, when read in light of I.C. § 29–109,[12] could very well be a valid offer. Evidence as to whether Mr. Mendenhall intended this writing to be an offer would necessarily have to be adduced.

Any offer found to have been made in this case would have been subject to revocation and withdrawal by the offeror prior to acceptance.[13] It is a question of fact whether the letter from Wallace Transtrum of November 8, 1968, was a valid and effective revocation of any previous offers. If it is found by the district court that there was any valid offer which was not revoked, then the purported acceptance of April 15, 1969, will need to be scrutinized. An acceptance, to be effective, must be identical to the offer and unconditional, not a modification of the offer or introducing new terms.[14] The minds of the parties must meet as to all the terms before a contract is formed.[15] An unreasonable lapse of time will terminate an offer[16]; and just what is an unreasonable lapse of time is a question of fact for the trial court.[17]

The respondents have failed to show that they are entitled to judgment as a matter of law. Since there are issues of fact to be resolved, the order of the district court granting summary judgment is reversed and the cause remanded with directions that it be reinstated and that further proceedings be had therein consonant with the views expressed herein.

Costs to appellants.

DONALDSON, C. J., and SHEPARD, McFADDEN and BAKES, JJ., concur.

12. I.C. § 29–109 reads: "Where a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and the particular contract in question, the written parts control the printed parts, and the parts which are purely original control those which are copied from a form, and if the two are absolutely repugnant, the latter must be so far disregarded."

13. *See* Simpson, Contracts, § 12 (2d ed., 1965) ; Corbin, Contracts, § 38, p. 61 (1952).

14. C. H. Leavell and Company v. Grafe and Associates, Inc., 90 Idaho 502, 513, 414 P.2d 873 (1966).

15. Templeton Patents, Ltd. v. J. R. Simplot Company, 220 F.Supp. 48 (1963), aff'd 336 F.2d 261 (1964) ; *see also* C. H. Leavell and Company v. Grafe and Associates, Inc., *supra,* note 14 ; 1 Corbin, Contracts, § 29, p. 82 (1963) ; Restatement, Contracts, § 32, p. 40 (1932).

16. Restatement, Contracts, § 40, pp. 47–48 (1932) ; 1 Williston, Contracts, § 54 (3d ed., 1957) ; 1 Corbin, Contracts, § 36 (1963).

17. Restatement, Contracts, § 40, p. 48 (1932).