116 P.3d 8

**POTTS CONSTRUCTION COMPANY, an Idaho corporation, Timber Construction Company, an Idaho corporation; and Charlie Potts and Billie Potts, husband and wife, Plaintiffs–Respondents,**

v.

**NORTH KOOTENAI WATER DISTRICT, Defendant–Appellant.**

No. 29666.

Supreme Court of Idaho,
Coeur d'Alene, October 2004 Term.

June 17, 2005.

Robert E. Covington, Hayden, for appellant.

John F. Magnuson, Coeur d'Alene, for respondent.

SCHROEDER, Chief Justice.

This appeal involves a breach of contract claim between a private citizen and a municipal water district. North Kootenai Water District (NKWD) appeals an order granting summary judgment in favor of Potts Construction Company, Timber Construction Company, Charlie and Billie Potts (Potts) for breach of an alleged contract to initiate water services to parcels of land owned by Potts.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

On May 13, 1999, NKWD adopted Ordinance 99–4, which requires all new domestic water service connections in North Kootenai County pay a $2000 per lot "capitalization fee" in addition to a $600 "hook-up fee." Prior to adoption of this ordinance, new users were only required to pay a one-time $800 "hook-up and meter fee" in order to establish water services. Ordinance 99–4 was to become effective upon publication. The purpose of the ordinance was to ensure future availability of water services in the district and to allow for gradual replacements of equipment. The ordinance was published and became effective on June 9, 1999. In adopting Ordinance 99–4, NKWD reserved the right to amend the ordinance at any time by way of a Board of Directors resolution. In April of 2001 the Board of Directors passed Resolution 2001–03, which provided that those parties who paid for water service prior to June 3, 1999, would not be subject to the new capitalization fee. On June 14, 2001, the Board of Directors passed

another resolution, Resolution 2001–04, which amended Ordinance 99–4. The amended ordinance required those parties who had paid for "hook-up" services prior to the ordinance's effective date, but who had not physically connected to the system until after June 9, 1999, to pay the capitalization fee.

Potts owned 13 unconnected plots of land within NKWD's jurisdiction. On May 20, 1999, Potts paid the then $800 per lot "hook-up" fee for all thirteen of his unconnected lots but only requested that eight of the thirteen parcels receive physical connection at the time he paid the "hook-up" fees. In July of 2001 Potts sought to have his remaining five plots connected to NKWD's system. NKWD informed Potts that he would be required to pay capitalization fees for his remaining plots. Potts eventually paid the fees under protest and established water service for his lots.

Potts filed a Complaint against NKWD for breach of contract and declaratory relief, alleging that his payment of hook-up fees in May of 1999 constituted a binding contract that no new or additional fees would be assessed on his lots for set-up of water service. Potts moved for partial summary judgment on the liability issue of the alleged contract. The district court granted Potts' partial summary judgment motion, finding that an oral contract existed between the parties exempting Potts from any future charges relating to set-up of water services on the five lots. Based on this finding the district court determined Potts' declaratory relief claim was moot. NKWD filed a motion for reconsideration arguing that the capitalization fee was an exercise of its police power such that NKWD was free to affect or modify any prior contract it had with Potts. The district court denied NKWD's motion. Potts moved for summary judgment on the issue of damages, and the court entered judgment in favor of Potts to recover the capitalization fees he had paid under protest. NKWD appealed.

## II.

## STANDARD OF REVIEW

■ Review by the Supreme Court of an entry of summary judgment is the same as that required by the district court when ruling on the motion. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). A district court determines a motion for summary judgment based on whether there are any genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c)(2004); *id.* In determining whether there are genuine issues of material fact the court reviews all evidence in the light most favorable to the non-moving party. *Id.* If the evidence shows no disputed issues of material fact, what remains is a question of law over which the appellate court exercises free review. *Id.*

## III.

## THERE WAS NO CONTRACT BETWEEN THE PARTIES THAT PRECLUDED ENFORCEMENT OF THE CAPITALIZATION FEE ORDINANCE

■ NKWD argues there is no evidence indicating Potts' intent to create a contract exempting him from the capitalization fee when he paid "hook-up" fees on May 20, 1999. NKWD maintains that the district court's reliance on Resolution 2001–03 as evidence of NKWD's intent to form a contract is erroneous because Ordinance 99–4 unambiguously assesses a capitalization fee on all new users who connect to the system after the ordinance's effective date. NKWD asserts there is no evidence that the Board of Directors of NKWD approved or ratified a contract with Potts allowing him an exemption from the capitalization fee and disputes the district court's finding that Resolution 2001–03 "amended" the ordinance to exempt persons such as Potts.

Potts contends that the undisputed facts establish that there was a distinct understanding created between him and NKWD that he would not be assessed further fees following the $800 in "hook-up" fees paid on May 20, 1999. Potts relies on NKWD's Board of Director's minutes in discussing and adopting Resolution 2001–03 to show NKWD's intent to enter into a contract and a

claimed conversation with an employee of NKWD.

 An enforceable contract requires "distinct understanding common to both parties." *Hoffman v. S V Co., Inc.*, 102 Idaho 187, 189, 628 P.2d 218, 220 (1981) (citation omitted). Acceptance of an offer must be unequivocal and identical to the offer made. *Turner v. Mendenhall*, 95 Idaho 426, 429, 510 P.2d 490, 493 (1973). "The minds of the parties must meet as to all the terms before a contract is formed." *Id.* (citation omitted). Proof of a meeting of the minds requires evidence of mutual understanding as to the terms of the agreement and the assent of both parties. *Thomas v. Schmelzer*, 118 Idaho 353, 356, 796 P.2d 1026, 1029 (Ct.App. 1990).

There is insufficient evidence to show that a binding contract was formed between NKWD and Potts at the time the "hook-up" fees were paid, lacking proof of the authority of any person to bind NKWD on the terms of the alleged agreement, any consideration given for such an agreement, the duration of such an agreement, or the purpose of NKWD to create a contract through Resolution 2001–03.

Potts' payment of "hook-up" fees is insufficient by itself to create a binding contract. Similarly, adoption of Resolution 2001–03 does not establish the existence of a contract. It was not negotiated between NKWD and Potts. It was the unilateral act of NKWD acting within its authority to determine policy. Whatever rights it might or might not create, it does not constitute an offer to form a contract.

## IV.

### ADOPTION OF ORDINANCE 99–4 WAS A VALID EXERCISE OF NKWD'S POLICE POWER AUTHORITY

 NKWD argues Ordinance 99–4 was adopted pursuant to a valid exercise of police power authority granted to the district by Idaho Code §§ 42–4201 and 42–3212. Generally police powers consist of government conduct that has "for its object the public health, safety, morality or welfare."

6A Eugene McQuillin, The Law of Municipal Corporations, Police Powers § 24.28 (3d ed. 1997). A municipality may collect fees considered incidental to regulation and enacted pursuant to the municipality's police powers. Idaho Const. art. 12 § 2; *Idaho Bldg. Contractors Ass'n v. City of Coeur d'Alene*, 126 Idaho 740, 742–43, 890 P.2d 326, 328–29 (1995) (citations omitted). Such municipal fees must be rationally related to the cost of enforcing the regulation and cannot be assessed purely as a revenue-generating scheme. *Brewster v. City of Pocatello*, 115 Idaho 502, 504, 768 P.2d 765, 767 (1988). *Brewster* distinguished between a fee enacted under a municipal's police power authority and one which operates as general tax on the public. *Id.* at 505, 768 P.2d at 768. A municipal corporation's taxes on the general public require specific legislative authorization. *Id.; but see Kootenai County Prop. Ass'n v. Kootenai County*, 115 Idaho 676, 680, 769 P.2d 553, 557 (1989). According to *Brewster*, "a fee is a charge for a direct public service rendered to the particular consumer, while a tax is forced contribution by the public at large to meet public needs." *Id.*

In *Loomis v. City of Hailey*, 119 Idaho 434, 807 P.2d 1272 (1991), a municipal water connection fee that created an "equitable buy-in" structure, whereby only users of the city's water services were charged connection fees, was upheld as a valid exercise of police power authority. *Id.* at 444, 807 P.2d at 1282. In *Loomis* the fees were segregated and used to repair and replace water system components used by the city. *Id.* at 443, 807 P.2d at 1281. Additionally, in *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 899 P.2d 411 (1995), the Court found a city's collection of revenues "sufficient to cover the costs of operation, maintenance, replacement and depreciation" for a local waste water treatment facility to be a valid exercise of police power authority. *Id.* at 202, 899 P.2d at 415. However, the Court struck down a municipal fee in *Idaho Bldg. Contractors Ass'n v. City of Coeur d'Alene*, 126 Idaho 740, 890 P.2d 326 (1995), finding that the impact fee assessed by the City of Coeur d'Alene operated more along the lines of a general tax and therefore required specific

**682**

legislative authorization. The fee was for the benefit of the public at large and there was no way to control how the collected fees were spent by the city. *Id.* at 744, 890 P.2d at 330.

 In addition to having a regulatory purpose, a municipal fee must be reasonably and rationally related to the regulatory purpose. *Sanchez v. City of Caldwell,* 135 Idaho 465, 468, 20 P.3d 1, 4 (2001) (citation omitted). The burden falls on the party challenging the validity of a police power to show that it is either in conflict with the general laws of the state, unreasonable or arbitrary. *Plummer v. City of Fruitland,* 139 Idaho 810, 813, 87 P.3d 297, 300 (2004). Whether or not an ordinance is unreasonable or arbitrary is a question of law. *Sanchez,* 135 Idaho at 468, 20 P.3d 1 (citing *Lewiston Pistol Club, Inc. v. Bd. of County Comm'rs of Nez Perce County,* 96 Idaho 137, 525 P.2d 332 (1974)). Generally courts are not concerned with the wisdom of ordinances and will uphold a municipal ordinance unless it is clearly unreasonable or arbitrary. *Id.; State v. Clark,* 88 Idaho 365, 373, 399 P.2d 955, 959 (1965).

Similar to *Loomis* and *City of Chubbuck,* the capitalization fee assessed by Ordinance 99–4 is an exercise of the NKWD's police power. Idaho Code § 42–3201 states that the purpose of water and sewer districts is to "serve a public use and ... promote the health, safety, prosperity, security and general welfare of the inhabitants of said districts." I.C. § 42–3201 (2003). Idaho Code § 42–3212 grants municipal water service boards the authority to increase or decrease rates and fees as needed and to proscribe those actions necessary and proper to carry out their duties. I.C. § 42–3212 (2003). Pursuant to these statutory grants of authority NKWD adopted Ordinance 99–4. Similar to *Loomis,* Ordinance 99–4's capitalization fee created an equitable buy-in structure, with revenues delegated for repairs, replacement and maintenance of system components proportionally used by those within the water district's system. Additionally, the capitalization fee is reasonable and rationally related to the purpose of the municipal's regulatory function of insuring clean and safe water for those users of the district's system. The capitalization fee imposed by Ordinance 99–4 only applies to those who pay into the system and is reasonably related to public health. It is a valid exercise of NKWD's police power.

## V.

## CONCLUSION

The decision of the district court that a binding contract was formed is reversed. Ordinance 99–4 is a valid exercise of NKWD's police power. NKWD is awarded costs. No attorney fees are allowed.

Justices TROUT, KIDWELL, EISMANN and BURDICK concur.